IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MISSOURI PROTECTION & ADVOCACY SERVICES, ) ) ) | | |
| Plaintiff, ) | | |
| v. ) | Case No. 22-03165-CV-S-BP | |
| ) | | |
| HOWELL COUNTY SHELTERED WORKSHOP ) BOARD, d/b/a Howell County Next Step, and ) TRICIA EDWARDS, Executive Director of ) Howell County Next Step, in her individual and ) official capacities, ) ) | | |
| Defendants. ) | | |

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff initiated this suit, seeking copies of records it believes it is entitled to receive under two federal laws. Now pending is Plaintiff's Motion for Preliminary Injunction, (Doc. 9), which seeks copies of all records related to services and treatment provided to and for J.K. The Court has considered the parties' arguments and now **GRANTS** the motion.

## I. BACKGROUND

The Court begins by summarizing relevant the statutory schemes to provide context for the issues. This case involves the Developmental Disabilities Assistance and Bill of Rights Act ("PADD") and the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI").[1] These statutes were enacted to protect those with developmental disabilities and mental illnesses from abuse, neglect, and injury. *E.g., Protection & Advoc. for Persons with Disabilities v. Armstrong*, 266 F. Supp.2d 303, 309 (D. Conn. 2003); *Iowa Prot. & Advoc. Servs., Inc v. Gerard*, 152 F. Supp.2d 1150, 1157-58 (N.D. Iowa 2001). PADD and PAIMI require states to designate

---

[1] PADD is sometimes referred to as the "DDA" or the "DD Act." The Court will continue to use "PADD" as that is the term used by the parties.

an advocacy system (sometimes referred to as a "system," a "P & A," or a "P&A") to perform a variety of functions to protect, and advocate for, the developmentally disabled and those with mental illnesses. 42 U.S.C. § 10805(a) (PAIMI); 42 U.S.C. § 15043(a) (PADD). Plaintiff is a non-profit public interest law firm that has been appointed by the Governor of Missouri as the State's P&A, so it has the powers and responsibilities defined by PAIMI and PADD.

The two statutes (and corresponding regulations) are similar; the differences are minor and of no consequence. For ease of discussion, the Court will focus on PAIMI and include corresponding cites for PADD. As relevant here, PAIMI charges Plaintiff with the responsibility to "investigate incidents of abuse and neglect of individuals with mental illness . . . if there is probable cause to believe that the incidents occurred" and to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." 42 U.S.C. § 10805(a)(1)(B)-(C) (PAIMI); *see also id*. §§ 15043(a)(2)(A)(i), 15043(a)(2)(B) (PADD). To fulfill these functions, Plaintiff has a right to access records about an individual; Plaintiff primarily relies on provisions allowing it access to records for an individual (1) whose mental or physical condition renders them unable to authorize access to his or her records, (2) whose legal guardian is the State, and (3) with respect to whom Plaintiff has probable cause to believe there has been abuse or neglect. *Id*. § 10805(a)(4)(B) (PAIMI); *see also id*. § 15043(I)(ii) (PADD).

J.K. is approximately thirty-three years old and has been diagnosed with bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and mild intellectual disability. The Circuit Court of Clay County (Missouri) determined she was incapacitated in 2007 and appointed the Clay County Public Administrator (the "Clay County PA") as her guardian. The details of her placement are not relevant to the issues before the Court, except to observe that beginning at least

in April 2015, Plaintiff was receiving case management services from Howell County Next Step, ("Next Step"), which is operated by the Defendant Howell County Sheltered Workshop Board, ("the Board"). Defendant Tricia Edwards is Next Step's Executive Director.

In April 2019, J.K. contacted Plaintiff and requested legal assistance replacing the Clay County PA as her guardian and having her grandmother appointed. Assisting with such efforts is also part of Plaintiff's mandate as a P&A, and the matter was eventually assigned to an attorney, Tamara Kenney. While obtaining information related to that matter, Ms. Kenney obtained information that caused her to believe J.K. had been abused or neglected. Ms. Kenney gathered additional information reinforcing that belief and eventually requested J.K.'s records from Defendants. Defendants refused to supply them.

The Amended Complaint contains two counts. Count I alleges Defendants violated PAIMI and PADD by denying Plaintiff's request for J.K.'s records and seeks an injunction requiring Defendants to provide them. Count II alleges Defendants' violations of PAIMI and PADD also violate 42 U.S.C. § 1983 and seeks recovery of attorney fees and costs pursuant to 42 U.S.C. § 1988. Now pending is Plaintiff's Motion for Preliminary Injunction, which seeks an Order requiring Defendants to provide Plaintiff with J.K.'s records. Defendants oppose entry of such an Order. The Court resolves the parties' arguments below.

## II. DISCUSSION

Neither party has requested a hearing, and neither party has indicated there are any factual issues to be resolved. To the extent there are factual disputes they involve matters irrelevant to the issues before the Court. Accordingly, the Court can proceed without conducting an evidentiary hearing.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Consequently, "[t]he burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). In adjudicating Plaintiff's motion, the Court must consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "While 'no single factor is determinative,' the probability of success factor is the most significant." *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020) (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)). Therefore, the Court will discuss the likelihood of Plaintiff's success on the merits first.

### A.  Likelihood of Success on the Merits

PAIMI provides Plaintiff shall "have access to all records of," among others, any person

> (i) who by reason of the mental or physical condition of such individual is unable to authorize the [P&A] to have such access;
>
> (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> (iii) with respect to whom a complaint has been received by the [P&A] or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect.

42 U.S.C.A. § 10805(a)(4)(B). PADD contains similar language. *Id*. § 15043(I)(ii). The first two points are not at issue. The parties (for the most part) assume for the sake of argument Plaintiff

4

cannot consent.[2]  Defendants also do not dispute that because J.K.'s guardian is the Clay County PA, and because Clay County is a political subdivision of Missouri, J.K.'s guardian is regarded as the State of Missouri for purposes of PAIMI and PADD.  *See* 42 C.F.R. § 51.41(b)(2)(ii) (PAIMI); 45 C.F.R. § 1326.25(a)(2)(ii) (PADD).

PAIMI and PADD do not define the terms "abuse" or "neglect," but relevant regulations do.  The definitions are lengthy; as relevant to the present case, PAIMI's attendant regulation defines "abuse" to include "verbal, nonverbal, mental and emotional harassment," the improper use of restraints, "and any other practice which is likely to cause immediate physical or psychological harm or result in long-term harm if such practices continue."  42 C.F.R. § 51.2.  "Neglect" is defined to include the failure to "establish or carry out an appropriate individual program or treatment plan (including a discharge plan)" or "provide adequate nutrition, clothing, or health care."  *Id*.  PADD's corresponding regulation defines the terms in virtually the same way.  *See* 45 C.F.R. § 1326.19.

Defendants attempt to dispute Plaintiff's assertion that it has probable cause to believe J.K. may have been subjected to abuse or neglect.  Most of their arguments focus on J.K.'s desire that her grandmother be her guardian, leading them to contend J.K.'s dissatisfaction with the Clay County PA and her desire for a new guardian do not constitute abuse or neglect.  (*E.g.*, Doc. 15, pp. 11-12.)[3]  They also criticize Plaintiff's failure to provide information documenting the alleged

---

[2] Other provisions apply if the individual or the guardian consents. 42 U.S.C. § 10805(4)(A) (PAIMI); *id*. § 15043(I)(i) (PADD).  Yet another provision applies if the individual has a guardian, and the guardian is not the State.  *Id*. § 10805(a)(4)(C) (PAIMI); *id.* § 15043(I)(iii) (PADD).  Plaintiff suggests J.K. has the capacity to consent and that she had done so, (Doc. 13, pp. 18-19), but Plaintiff does not explicitly rely on §§ 10805(4)(A) or 15043(I)(i) or provide the Court with sufficient facts to determine J.K.'s capacity.  The Court will therefore analyze the case as if Plaintiff lacks the capacity to consent.

[3] All page numbers for documents filed with the Court are those generated by the Court's CM/ECF system.

abuse or neglect and suggest that no abuse or neglect occurred.  (*E.g.*, Doc. 15, pp. 5-6, 8-9.)  These arguments are unavailing.

First, "[c]ases interpreting PAIMI have repeatedly held that a P&A's probable cause determination does not require judicial review."  *Matter of Disability Rights. Idaho Request for Ada Cnty. Coroner Recs. Relating to the Death of D.T.*, 168 F. Supp. 3d 1282, 1298 (D. Idaho 2016) (citing cases) (hereafter, *Disability Rights Idaho*); *see also Disability Rights Ohio v. Buckeye Ranch, Inc.*, 375 F. Supp. 3d 873, 886 (S.D. Ohio 2019); *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 886-87 (S.D. Ohio 2005) (citing cases).  Nonetheless, at Plaintiff's suggestion, the Court has reviewed *in camera* information explaining the basis for Plaintiff's probable cause determination.  The information readily establishes the determination was not based on J.K.'s desire that her grandmother be her guardian or J.K.'s mere dissatisfaction with the Clay County PA.  In fact, a fair amount of the information does not involve the Clay County PA at all.  Regardless, the fact that Plaintiff obtained the information while pursuing efforts to potentially replace the Clay County PA as J.K.'s guardian does not preclude the information from also providing Plaintiff with probable cause to believe J.K. has been abused or neglected.  To the extent the Court must be convinced, the Court finds Plaintiff has probable cause to believe J.K. was abused or neglected.[4]

For these reasons, the Court concludes Plaintiff is likely (if not certain) to succeed on its claim that it is entitled to J.K.'s records.

---

[4] Defendants' attacks on J.K.'s veracity and suggestions there was no abuse or neglect are irrelevant.  (*E.g.*, Doc. 15, pp. 5-6, 12-13.)  The issue is not whether there was abuse or neglect, but whether there is "reasonable grounds for belief [J.K.] has been, or may be," subject to or at risk of abuse or neglect.  42 C.F.R. § 51.2 (PAIMI); 45 C.F.R. § 1326.19 (PADD).  This is not an exacting standard.  Moreover, it is Plaintiff's role and obligation to investigate the matter.

6

## B. Threat of Irreparable Harm

As stated earlier, Plaintiff is statutorily responsible to investigate reports of abuse and neglect. Delays in such investigations can be significant, particularly as delays may allow the abuse or neglect to continue or hamper the ability to uncover such occurrences. Accordingly, "[n]umerous courts have concluded that a P&A's inability to meet its federal statutory mandate to protect and advocate on behalf of those with mental illness constitutes irreparable harm." *Disability Rights Idaho*, 168 F. Supp. 3d at 1300 (citing cases); *see also J.H. ex rel. Gray v. Hinds Cnty.*, 2011 WL 3047667, at *2 (S.D. Miss. July 25, 2011) (citing cases).

Defendants' only argument on this point is that Plaintiff could have sought relief in the Clay County Probate Court. (Doc. 14, p. 2.) The Court does not agree that inviting Plaintiff to file a different lawsuit in a different forum seeking a different form of equitable relief is an adequate remedy at law or avoids the "irreparable harm" resulting from Defendants' failure to abide by PAIMI and PADD. Those statutes give Plaintiff specific powers that do not require resort to state probate proceedings.

## C. Balance of Harms

The balance of harms strongly favors Plaintiff. As discussed in Part II.B, Plaintiff is responsible for investigating claims of abuse and neglect. On the other hand, Defendants cannot claim any interest in thwarting Plaintiff's right to investigate or its request for records under circumstances Congress has specifically identified as justifying the request. As the Eleventh Circuit has explained:

> The facility can claim no interest in avoiding investigations of harm or injury to a person with a disability. Minor inconveniences to staff or some disruption of the facility's routine hardly rise to the level of the liberty interest that is generally at issue in a criminal investigation. Indeed, one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected. Likewise, when a P & A makes a finding of probable cause, no liberty

interest of the developmentally disabled person is threatened, as it is precisely that individual's interest that the P & A seeks to protect.

*Alabama Disabilities Advoc. Prog. v. J.S. Tarwater Dev. Ctr.*, 97 F.3d 492, 499 (11th Cir. 1996). This case also establishes there is no harm to J.K. from granting Plaintiff's request, given it is her interests that Plaintiff seeks to protect. The Court further observes Defendants do not suggest any harm to themselves or any third parties, much less that the balance of harms does not favor Plaintiffs.

### D. Public Interest

The Court's analysis of the public interest is similar to its analysis of the balance of harms. There is a strong public interest in allowing Plaintiff to perform its Congressionally mandated function of investigating when it has probable cause to believe an individual with developmental disabilities or a mental illness is being abused or neglected. The public interest is not served by denying Plaintiff access to the records it is statutorily allowed to have.

### E. Remaining Issues

Defendants present other arguments opposing Plaintiff's request that do not necessarily fit within the *Dataphase* factors. The Court addresses those arguments below.

#### 1. Requiring Joinder of the Clay County PA

Defendants first ask the Court to consider whether the Clay County PA must be joined as a necessary and indispensable party. However, Defendants do not analyze the governing rule, which is Rule 19 of the Federal Rules of Civil Procedure. (*See* Doc. 15, pp. 10-11.) Instead, they simply suggest the Clay County PA must be joined because it is J.K.'s guardian. The Court disagrees.

First, Rule 19(a)(1) describes when a party is "required" and must be joined if feasible. Rule 19(a)(1)(A) applies if the Court is unable to provide complete relief without the Clay County

8

PA's involvement in the suit. This provision does not apply because Defendants have the records and can be ordered to provide them.

Rule 19(a)(1)(B requires joinder of the absent party if it

claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

i. as a practical matter impair or impede the person's ability to protect the interest; or

ii. leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

This provision also does not apply. The Clay County PA has no interest in thwarting Plaintiff's investigation or any other interest to protect, and there is no risk of Defendants being subject to multiple or inconsistent obligations.

Second, and more importantly, PAIMI and PADD specifically provide – as discussed earlier – Plaintiff shall have access regardless of whether J.K.'s guardian approves. These statutes "grant[ ] the P & A what might be described as 'overriding' authority to obtain access to patients and their records, notwithstanding a guardian's refusal or failure to act on behalf of the individual upon the request of the P & A for permission for such access." *Gerard*, 152 F. Supp. 2d at 1165; *see also Disability Law Center, Inc. v. Riel*, 130 F. Supp. 2d 294, 299-300 (D. Md. 2001). The statutes do not require the Clay County PA's consent, and courts have held such consent is not required. *E.g., Disability Rights Ohio*, 375 F. Supp. 3d at 881-82. By giving Plaintiff this right of access, PAIMI and PADD preclude a finding that the Clay County PA is a necessary and indispensable party.

## 2. Failure to Exhaust

Defendants next contend Plaintiff failed to avail itself of an available administrative remedy so its request for injunctive relief should be denied. However, PAIMI and PADD do not contain an exhaustion requirement.

Defendants point to 42 C.F.R. § 51.32 which encourages P&As to develop and utilize nonadversarial methods to resolve disputes. Section 51.32(c) specifically directs that a P&A "must exhaust in a timely manner all administrative remedies, where appropriate, prior to initiating legal action in a Federal or State court," but § 51.32 merely encourages informal efforts to resolve a dispute where they exist before initiating litigation and is not, itself, an administrative remedy. Regardless, the Record establishes Plaintiff has engaged in extensive efforts to obtain J.K.'s records from Defendants (a fact they do not deny) and Defendants have refused to honor Plaintiff's request.[5]

## 3. In Camera Review of J.K.'s Records

Finally, Defendants suggest the Court conduct an *in camera* review of J.K.'s records and decide (with the Clay County PA's input) what records of J.K.'s Plaintiff is entitled to receive. The Court rejects the invitation. First, as discussed earlier, the Clay County PA's input is irrelevant. Second, the definition of "records" is broad. PAIMI defines the term to include

> (1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities;
>
> (2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and

---

[5] Defendants' arguments suggest they view Plaintiff's request as a ruse designed solely to further the effort to replace the Clay County PA as J.K.'s guardian; as the Court explained earlier, this is not accurate. And, to the extent Defendants suggest Plaintiff must provide them with "more proof" establishing to their satisfaction Plaintiff has probable cause to believe J.K. has been abused or neglected, the Court holds there is no such requirement in the regulation or the statutes.

(3) a discharge planning record.

42 U.S.C.A. § 15043(c).  PADD defines "records" similarly to include:

> reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

42 U.S.C.A. § 10806(b)(3)(A). These statutory definitions are "quite broad" and "a rational reading is that [they] refer[ ] to records pertaining to or relating to an individual." *Center for Legal Advoc. v. Hammons*, 323 F.3d 1262, 1270 (10th Cir. 2003); *see also Protection & Advoc. for Persons with Disabilities, Conn. v. Mental Health & Addiction Servs.*, 448 F.3d 119, 125 (2d Cir. 2006); *Disability Rights Tex. v. Bishop*, 2022 WL 2817983, at *7 (N.D. Tex. July 19, 2022) (citing cases). And regulations for both statutes further establish such records include those "obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records, . . . and reports prepared or received by a member of the staff . . . of a facility or program providing care or treatment." 42 C.F.R. § 51.41(c)(1) (PAIMI); *see also* 45 C.F.R. § 1326.25(b)(1) (PADD). Finally, given the breadth of the definitions, the Court does not know what purpose an *in camera* review would serve – which (along with a concern about unduly impeding the P&A's investigatory efforts) is why courts typically deny such requests. *E.g., Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 368 (M.D. La. 1999).

### III.  CONCLUSION

For these reasons, Plaintiff's Motion for Preliminary Injunction, (Doc. 9), is **GRANTED**. Defendants are **ORDERED** to provide Plaintiff with any and all records pertaining to J.K. within

fourteen days. Given the nature of the case, the Court believes no bond should be required.

**IT IS SO ORDERED.**

Date: October 24, 2022

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT